Good morning counsel. Good morning your honors. Mark Vanderhoof here on behalf of the petitioner along with co-counsel Amy Hutchinson and Johnny Stenotis. I'd like to reserve three minutes for rebuttal and I do understand that it's up to me to manage your time. This case involves essentially two distinct appeals. One challenges the reinstatement order itself on several grounds. The other, the finding by the immigration judge that Mr. Mejia had failed to demonstrate a reasonable fear of persecution or torture that would warrant a full hearing on his withholding and CAT claims. Given the court's denial of our motion to supplement, I will only be addressing the Fourth Amendment issue regarding removability and will then move on to the reasonable fear issue. Regarding the violation of the Fourth Amendment and the regulation, the instant case is almost an all-fours with this court's 2018 decision in Sanchez v. Sessions. In Sanchez, this court held that petitioner had made out a prima facie case that the Coast Guard detained and held Sanchez based solely on his Latino appearance and then held him. I guess at what point was he detained, but was he detained for presenting an AB-60 license? If so, does detaining someone based on an AB-60 license constitute racial profiling? I mean, he went on a base where he has to identify himself, right? Your Honor, and we believe that the AB-60 license was... Well, it's not like someone pulled him over. You know, he initiated the contact. He wanted to go work there. He knew he had to show identification, and an AB-60 is not exactly the same as some other types of identification. Well, Your Honor, thousands of U.S. citizens, lawful permanent residents, other people lawfully in the United States can have an AB-60 license. The only issue in the Navy... Can people have an AB-60 license that don't have lawful status? Yes, they can. Okay, so why doesn't... But that, well, Your Honor... Why doesn't that say, well, hey, I'd like to know a little more? I don't think that's reasonable suspicion of being in the country unlawfully, and that's what's required under both the Constitution and the regulations. He was... If a white person had gone in there, if I had, and shown an AB-60 license, I can tell you that I would not have been put in a room and had immigration call. How do you know that? How do you know? Wasn't there a step, an interim step that it came back false, or wasn't there some indication? Was there any indication that the license was not valid? No. There was not? None whatsoever. None whatsoever. So all that he knew was he presented this license, and he was Latino, and that is not reasonable suspicion based on specific articulable facts. That is a race-based stop and detention, and what he was... Well, we have people... A lot of our immigration proceedings are not just Latinos. I mean, we have people from Russia, we have Asians, we have all over. So if a person has an AB-60, and AB-60s are given to people that have no legal status, why can't they check to see whether the person... I mean, if a person does not have legal status, do they have to let them on the base? They... Well, first of all, the... Could you answer that question, though? Could you answer her question? I actually don't know the Air Force base rules on that, but they don't have any power to enforce U.S. immigration laws. They're not authorized to do that. They cannot make a stop based on immigration issues. So the Air Force is not entitled, and Martinez from Medina says this, that being in the United States illegally is not a crime. They do not have power under the regulations of the statute to enforce U.S. immigration laws. They're not allowed to do that. So they... On page 69 of the record, there is a... I think it's a newspaper article that says, an Air Force Captain, Lindsey Horne, said when Mejia and the other person entered their ID numbers, the information came back false. That is true. That is what the Sacramento Bee said in the newspaper article. Two points on that. That is a newspaper article that is not part of the record. The record of proceedings in this case is a... It's in the certified administrative record. It's in the certified administrative record, but, Your Honor, this has got two appeals. The certified record of proceedings, which is what was submitted as the record, shows that the I-213 is what was stated as the record, and that shows that the AB-60 license was as an exhibit with the discretion, with the reasonable fear determination, is not part of the certified record of proceedings. Just as this Court said to us, we cannot supplement the record. The government cannot use that, which is not part of the certified record of proceeding, on the reinstatement part. That certified record... Identified as part of the certified administrative record to us, when we got the materials, it was identified as part of... Separate from the certified administrative record. The certified record of proceedings is what controls the reinstatement, and that is, I think, like a little 13-page document. Well, we'll ask the government if they agree with you, if they agree with you. Pardon? We'll ask the government if they agree with you regarding what constitutes the record. Okay. That's fine. And so they're not allowed to do that, and they had no reasonable suspicion, and so we believe that under Sanchez, the I-213 should be suppressed, any other evidence regarding that, and the case should be terminated because of the egregious violation. But let me move on to the reasonable fear part of that. Well, before you leave that, what is your closest case authority to support the proposition that this is an egregious violation of the Fourth Amendment? Sanchez, Your Honor. He was race-based. We believe that, like I said, if this had been a white person coming to there and showing their AB-60 license, there would have been no issues. So if we disagree with you regarding whether or not this detention was race-based, do you lose your Fourth Amendment argument? We do, Your Honor. Correct. Turning to the reasonable fear, it's important to point out that this is a very low standard that must be demonstrated in order to obtain a full hearing with witnesses, counsel, etc. The applicant only needs to show a reasonable possibility of persecution, not the clear probability of persecution needed to ultimately be granted withholding or CAD. So counsel, in your view, what's the record, the administrative record, regarding the reasonable fear issue? It is the entire certified administrative record. Okay. So the Sacramento Bee article is part of that record? Correct, Your Honor. Correct, Your Honor. But that's for the reasonable fear to try. I get it. So there are three errors, at least, that the immigration judge made in regarding that. First, she improperly rejected, in some cases, completely failed to analyze petitioners' social groups. Second, in both her withholding and CAD analysis, she failed to consider at least two important evidence that supported petitioner's claim. And third, she applied an incorrect standard in analyzing the acquiescence issue relevant to the CAD claim. Now, as to the particular social groups, the IJ completely failed to analyze at least two of petitioner's social groups, the wealthy landowners in Jalisco and returning Mexicans known to immediate family members in the United States. As to the landowner's issue, which this Court initially gave notice it was batching, the IJ completely failed to discuss the social group at all, except to say that membership in such a group cannot form a basis for withholding claim. But that is completely contrary to this Court's holdings in Cordoba and Enriquez-Rivas and the BIA's holdings in Acosta and in Ray CA. And the evidence demonstrated at least the low threshold of a reasonable possibility. It's a little bit in question at this point, is it not? Because after that, Cordoba won, then there was, I want to say, is it M-A-V-G? M-E-V-G, correct. Okay, M-E-V-G. And I don't know what number of M-D-I-S-P-O's where they're not recognizing the wealthy landowners as a social group. So, but Cordoba just was for that purpose, sent it back and said go look at it and then M-E-V-G happened after that and the cases since M-E-V-G and I think another case that I was on. It seems to me that citing Cordoba won doesn't really help you. Well, we do think Cordoba is still good law. M-E-V-G said that the issue is what does the persecutor think? What is the, in the view of the persecutor, is that a recognized entity group in here? And Dr. Speck testified that it was and so did Dr. Borman, that Mexicans returning from the U.S. disappear at an alarming frequency. So, is that wealthy landowners? Is that support That part was on the returning Mexicans known to have family members. So, I apologize for that. That was on the wealthy landowners. What do you have on the wealthy landowners and whether or not, don't we have to? Dr. Speck's testimony at the car at 24 to 27 said that they are targeted due to their status as wealthy landowners. And what M-E-V-G said is you look to see what happens in that area. You look to see it. But not from the perspective of the persecutor, but it's social distinction. But M-E-V-G does say, and so does Enrique Rivas in this court, say that the issue of social distinction is informed by the persecutor's view of that group. It's informed by, but not determined by it. It said it's the most important, and that is key to the issue of particular social groups. I thought in Reyes we said the most important factor is whether or not the society, that is whether or not Mexican society recognizes wealthy landowners as a social group. Didn't we say that in Reyes? Reyes says it, Your Honor, but doesn't, there's not a conflict. Careful. There's not a conflict. There's not a conflict between that and Enrique Rivas. Well, but don't you have to have some indication that it's a recognized social group in the country where it's being attested? Correct. So is there any evidence in the record that in Mexico there is this specific group of people called wealthy landowners, or society labels them, or there is legislation regarding them, or there's something that sets them apart as a group? There is. There's not legislation. There's not. But I don't think that's the test, Your Honor. Well, how do we know, then, that it's a recognized social group in that country? The issue is you look at the facts. And so the expert testified that wealthy landowners are persecuted as a group. That's an opinion. That's an expert opinion. Correct. That's what the evidence. But the important point here, Your Honor, is that the judge didn't consider that. The judge didn't look at the evidence. What this Court has said, and the BIA has said, you've got to look at the evidence. And all the Court did was say it can't be a particular social group. So we believe what's appropriate here is remand to the Court for a full hearing on this, where evidence can be presented and where the issue can be fully vetted. She did not assess the evidence, and she had to. Well, unless you can persuade us that there is evidence that can be presented to support your position, why should we remand? There is evidence. And that's what the Court did not look at, is the government's, is the expert's testimony regarding that. The Immigration Judge did not consider that at all. And this Court has directed the Immigration Judge to consider the evidence. And that informs a particular social group. Let me ask you quickly about thoracicium. You wanted to stay this. I'm not making a total connect with how that would affect your case, because it's really, this is not in habeas here. And thoracicium basically goes to jurisdiction on habeas. And isn't it expedited removal? You're in a reinstatement. It is, Your Honor, and I'll be brief, because I only have a minute and a half. I know, but I don't want to stay a case if there's no reason to. Sure, sure. So it was an expedited removal case, but the issue is, there is review of that. And that's the important reason. It's jurisdiction. It's jurisdiction. You're not in habeas here. You're getting review. You're with us. We're not in habeas, but as we stated in our filing, this could be transferred to the District Court under 1631, because now there is clear review. The Supreme Court's going to decide that after argument on March 2nd, which is why we asked to stay this. But yes, there is review now under the Ninth Circuit thoracicium decision. And then if we are in the wrong court, if we're in the wrong court, it should be remanded. That's our position. All right. Thank you, Counsel. We'll give you a minute for rebuttal. Thank you. May it please the Court, my name is Dawn Conrad, and I'm here today on behalf of the U.S. Attorney General. DHS's reinstatement of Petitioner's 2001 expedited removal order was proper, and the record does not compel the conclusion that Petitioner established a reasonable possibility of persecution or torture in Mexico. I'd like to address some of the things that were raised during Petitioner's opening argument. And Petitioner first addressed his Fourth Amendment claim, which we would argue has never been presented to the agency or below. We have no evidence of this in this record. Well, did it have to be if it's a constitutional claim? Well, we would argue there's prudential reasons. It's not mandatory exhaustion, but there are prudential reasons to present that claim because it would have given the officer, the DHS officer, an opportunity to decide whether they should consider that in putting him in either 240 proceedings or in putting him in reinstatement proceedings. Because it's a constitutional claim, we can decide it in the first instance. Correct? In our opinion, it should. There at least are prudential reasons. But, yes, there could be. The case that says that we cannot decide a constitutional claim in a petition for review. Well, I would just say similar cases like Fifth Amendment due process claims are usually presented. Due process is different. Okay. Procedural due process is different because the board, the agency could rectify that or remand. But the record is what it is in terms of what happened in the Fourth Amendment issue. Correct. So do you have a case that says in that context we lack jurisdiction to decide the issue?  All right. Thank you. All right. So I think the petitioner's issue is basically he says it's egregious because it only happened to him because he's Latino. And I asked questions about obviously he wasn't pulled over. He wanted to do work on the base. Correct. If you want to go on the base, I can't go on the base without complying with whatever they want. So what's in the record? Well, the record does not support his allegation that there was any Fourth Amendment violation, much less egregious violation. Do you agree with opposing counsel that the record is truncated, that we can only look at a portion of the record? No, Your Honor. We believe you can look at the entire administrative record from both proceedings. We have both the reasonable fear proceedings and the record of proceedings in the reinstatement. And he actually submitted those newspaper articles were submitted by petitioner before the immigration court. But there's perfectly reasonable reasons for national security and other purposes that everyone who enters a military base has to show identification. And there's reasonable reasons why you would want to investigate further when someone produces an AB-60 license, because under California law, that means you do not necessarily are not able to establish lawful status in the United States. Well, if you're not lawful, are you allowed to go on the base? I don't know the answer to that, Your Honor, because none of that's in the record. We don't have, like, what the proceedings are before the, like, the Air Force base usual proceedings in such a situation. That's not in the record. What's your response to opposing counsel's position that these military forces violated the Fourth Amendment by negotiating his detention? So I would say we don't have evidence that he was detained until we got evidence back from DHS showing that he had a prior order of removal. At that point, they did hold him until DHS could investigate further. But we would say that they're permitted to do that under, much like he relies on Sanchez, much like the Coast Guard was permitted under 287A CFR 287.8B. Once you have a reasonable suspicion that an immigrant is an alien is illegally present in the United States, the immigration officer may briefly detain the person for questioning. So all they did was briefly detain him until the ICE officers could come and question him further. Did Mejia ever have a chance to challenge his underlying expedited order on due process grounds? Yes, he would have been able to file a habeas petition at some point before his proceeding was reinstated. But he never filed a habeas petition under 1252E2. So would DHS have placed Mr. Mejia in formal removal proceedings had he had more of a chance to inform the agency of his personal merit? We don't know that, Your Honor, because that stuff's not in the record. You mean his due process claims? Well, I mean, he basically, he'd been here a long time, right? I mean, there were a lot of, he could say a lot of positive things about himself, and so he really didn't, he as counsel did not, since we didn't allow the record to be supplemented, we didn't allow additional things. So in terms of the reinstatement procedure, what is your position as to what's required? Our position is he received everything that's required. And what's required? You have the opportunity, I believe, to be questioned, and he also had the opportunity to consult with counsel, which he waived. And then you have the opportunity to make a statement contesting the reinstatement before the DHS officer, and the DHS officer has the ability to consider that statement in deciding whether to reinstate his removal order. Did he really waive the counsel? Didn't he kind of raise, maybe I should get a lawyer, and the DHS person said, lawyer can't help you out, there's no need? Well, that's based on his extra record statement. That's not what we have in the record. And this court now has denied that statement into the record. So what we have in the record shows that he did agree to be questioned without counsel present. Now, is he asking for, I guess, from the standpoint right now, in terms of is he asking for something more in that procedure than is set out in the statutory scheme? Basically, as far as I can tell, he just wants to be able to be placed in 240 proceedings. But that doesn't change the fact that that's a discretionary determination, that this court doesn't have jurisdiction to review. And this court has held that in many cases, that that is a purely discretionary determination. So if we're not augmenting the record, and then we go to the rest, that you're saying that the decision is discretionary so it's not reviewable? That's correct. All right. Turning to his ‑‑ Counsel, I'm sorry. What's your response to opposing counsel's argument that the immigration judge should have addressed the wealthy landowner? That was where I was moving anyway, Your Honor. Okay. So, yes. So basically, in this case, the immigration judge, in the reasonable fear proceedings, rejected, without using the specific term, landowner, she rejected his first two ‑‑ first and third proposed social group as not being, I believe, considered particular. But she also, I think, which I think we got away from in Petitioner's opening argument, rejected all of his claims for not showing that it was on account of a particular social group. So I would like to address that first, because there's no evidence of nexus in this case whatsoever. Even if there is a particular social group of wealthy landowners, he has not shown that he is a member of that group or that he will be targeted or there's any particularized threat against him in Mexico because of that. There has never been a threat against him. There has not been a threat against his parents, who are the alleged landowners, I'm assuming, although we don't even have that from this record. We don't know what their status is with their house. If they own the house, how much of the house they own. I would say as to landowners, I don't believe, even though she doesn't specifically address that, I don't believe that requires remand because of the nexus issue and also the lack of a particularized threat. But I would also say landowners is very fact‑specific following MEVG, and this record does not establish that that group is a particular social group based on the evidence that we have in this record. Ms. Conrad, I'm a trial judge, and I feel happier and happier to not be involved heavily in immigration. I understand, Your Honor. But trial judges also look at equities and try to do justice in individual cases. Do you think Mr. Mejia really deserved to be summarily reinstated with an old removal order without looking at his family situation, his work situation, his life here in the United States? I understand your concern, Your Honor. It does seem a bit perhaps unfair in these reinstatement cases, but that is sort of what Congress intended because it's easy to lose sight of the fact that with these reinstatement cases, these are usually ‑‑ Sort of what they intended or what they intended? I'm sorry, what? Sort of what Congress intended or what they intended? What they intended. I mean, if Congress is intended to be heartless, then we have to follow the law, then you're saying he's sympathetic and that's what Congress intended. But if it's sort of what Congress intended, then what sort of else is there? No. What Congress intended with these reinstatement cases is a streamlined procedure, okay, where there is just basically ‑‑ Actually, Congress's statute says there's no review and there's no relief from removal in these reinstatement proceedings. But obviously, with the withholding of removal and convention against torture protection, those are mandatory forms of relief. So we have reasonable regulations that have been propagated to protect those interests. But with someone who has reentered the country after a removal, there is a strong interest in having streamlined proceedings that move quickly and that do not give the petitioner a full, like, merits hearing like you would have in 240 proceedings. Now, that being said, he's not without remedy because he could have spoken to the DHS officer about his concerns and they could have maybe made that discretionary determination to be placed in 240 proceedings. And he can also submit a request for prosecutorial discretion to DHS at any time. Are there any further questions? It appears not. Okay. Thank you, Your Honor. Thank you. One minute for rebuttal. A few brief points, Your Honor. As to exhaustion, Caster Cortez says in this situation you do not need to exhaust. It's not really an opportunity. As to the Judge Callahan, your question about does he have an opportunity to present anything, that was our argument, and same with you, Judge Leisnick, on the why we'd like you to reconsider the supplemental order. Well, your client's already, you know, on the heartless side of things. Okay. We talked about the sympathetic side. On the heartless side and what Congress is saying is he already was removed, and here he is again. And if every one that we remove them, does there have to be, Congress basically says we don't want a total do-over every time. And the longer, you know, if you let someone stay long enough, they can win a Nobel Peace Prize too. Possibly. So that's, but. It is that decision, we agree. But the issue is that his counsel, if he hadn't been denied the right to counsel, could have made the pitch, and that's what our argument is. And that was, that's why we think the denial of right to counsel is important. The court would like you to reconsider that. Lastly, I just want to state on acquiescence on CAT, which I didn't get a chance to review. We think it's fully briefed. The court made, the immigration judge made the wrong ruling and inquiry on the acquiescence issue. She said that the government's trying, that's enough. This court's decisions are clear that that's not enough. It's the efficacy of that. That set forth our brief. I know I'm over time, so I'll stop on that. But I would appreciate the court to look at that in our briefing because we think that's important. Thank you. Thank you both counsel for your arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Callahan, Lasnik